IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**DWIGHT DENNIS,**
Agency No.: A-079444966,

    Petitioner,

vs.                                                      Case No. 4:10cv445-SPM/WCS

**ERIC H. HOLDER, JR., et al.,**

    Respondents.

_____/

## REPORT AND RECOMMENDATION

    Petitioner, who is *pro se*, initiated this case by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 on October 15, 2010.  Doc. 1.  Service was directed and Respondents filed a response to the petition for writ of habeas corpus on March 31, 2011.  Doc. 13.  Since that time, Petitioner has been provided several opportunities to file a reply, and Petitioner was specifically directed to provide clarification as to several issues raised in the response.  Docs. 15, 17, 19, and 21.  Despite these opportunities, Petitioner has failed to provide a meaningful reply and has not complied with court orders.

    Petitioner is currently located at Krome S.P.C..  Docs. 20, 24.  Petitioner's subsequent transfer does not render this petition moot.  The simple and consistently

applied rule in these cases is that "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."  <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004); *see also* <u>Braden v. 30th Judicial Circuit Court of Ky.</u>, 410 U.S. 484, 494-495, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973).  Being moved *after* filing a petition will not effect the court's jurisdiction, as jurisdiction attaches upon the initial filing of the § 2241 petition, and will not be destroyed by Petitioner's subsequent Government-effectuated transfer and accompanying change in physical custodian.  <u>Padilla</u>, 542 U.S. at 440-41, 124 S.Ct. at 2721; *see e.g.,* <u>Mujahid v. Daniels</u>, 413 F.3d 991, 994 (9th Cir. 2005), *quoting* in <u>Francis v. Rison</u>, 894 F.2d 353, 354 (9th Cir. 1990).  Considering the opportunities provided to Petitioner for filing a reply to the Government's response, no further delay is necessary and it is time to rule on the merits of the petition.

**Allegations of the petition, doc. 1**

Petitioner alleges that as of October, 2010, he had been in detention for seven months awaiting removal.  Doc. 1, p. 1.  Petitioner was ordered removed in October of 2002, and stated that he entered immigration custody on February 5, 2010.  *Id.*  Petitioner alleges that he was born in St. Thomas, U.S. Virgin Islands, and has been living in the United States since October of 1975.  *Id.*, at 3.

Petitioner failed to assert in the petition the name of the country to which he was ordered removed.  Doc. 1, p. 1.  Furthermore, Petitioner did not name a country that had refused to issue travel documents for his removal.  *Id.*  Moreover, the petition contains no allegations explaining any effort on Petitioner's part to facilitate his removal.

*Id.*, at 4-5. Petitioner did allege that he did "not challenge the validity of the removal order against him." *Id.*, at 2. Petitioner only sought release from his ongoing detention under Zadvydas, *infra*, and claimed Respondents "refuse to release him even though they are unable to deport him and will be unable to deport him in the reasonably foreseeable future." *Id.*

**Answer, doc. 13**

During Petitioner's initial interview with immigration officials on July 30, 2002, Petitioner "presented what was later found to be a fraudulent U.S. Virgin Islands birth certificate, social security number, and a driver's license, claiming to be a United States citizen." Doc. 13, p. 2 (Ex. A).[1] The Virgin Islands' Bureau of Vital Statistics certified on August 5, 2002, that the purported birth certificate submitted by Petitioner was invalid. *Id.* The Social Security Administration also certified that the social security number Petitioner submitted was invalid. *Id.* The Forensic Document Lab of Immigration and Customs Enforcement (hereinafter "ICE") conducted an investigation into the documents presented by Petitioner and determined they were fraudulent. *Id.*

Removal proceedings were commenced against Petitioner alleging that Petitioner "was a native and citizen of Jamaica, who had entered the United States without being admitted or inspected by Immigration Officials. Doc. 13-1, p. 1. On October 25, 2002, a final order of removal was issued by an Immigration Judge in Miami, Florida. Doc. 13, p. 2. The Immigration Judge heard argument as to Petitioner's citizenship claims, but determined that Petitioner was not a citizen of the United States. *Id.*, at 2-3.

---

[1] The statement of facts in the Answer is taken from the Declaration of Deportation Officer Deborah Pasterak, attached to the Answer as Exhibit A. On the Court's electronic docket, it is document 13-1.

Case No. 4:10cv445-SPM/WCS

Petitioner's appeal to the Board of Immigration Appeals was dismissed on March 6, 2003.  *Id.*, at 3.

Based on the final order of removal, "ICE presented a travel document package to the Jamaican Consulate, which confirmed" that Petitioner was a Jamaican citizen and issued a travel document for him.  Doc. 13-1.  ICE then attempted to remove Petitioner on a flight to Jamaica on January 18, 2005, but Petitioner returned to the United States on January 19th, the day after his attempted removal.  *Id.*  During questioning, Petitioner said that he told the Jamaican authorities at the airport that he was a United States citizen.  *Id.*  Based on his claim, Jamaican authorities refused to accept Petitioner for entry into their country.  *Id.*

Petitioner reported to the Tampa ICE office on a regular basis, but did not seek to procure a travel document as specified in his OSUP guidelines.  Doc. 13, p. 3.  On April 11, 2007, ICE requested new travel documents for Petitioner from the Jamaican Consulate.  *Id.*  Petitioner was instructed to return to the Tampa ICE office for a telephonic interview with the Jamaican Consulate, but Petitioner never again reported to the office and, hence, the interview never took place.  *Id.*, at 4.

On February 2, 2010, Petitioner was returned to ICE custody after serving a sentence for possession of cannabis with intent, possession of cannabis less than 20 grams, and possession of drug paraphernalia.  Doc. 13, p. 4.  Petitioner again claimed that he was born in St. Thomas, U.S. Virgin Islands, and that he is a United States citizen.  *Id.*  ICE had previously determined Petitioner's claim was invalid and his allegedly supporting documentation was fraudulent.  *Id.*

Petitioner was entered into ICE's electronic Travel Document system on February 9, 2010, and frequent checks are made with the Jamaican consulate office for updates on the issuance of a travel document for Petitioner. Doc. 13, p. 4. Petitioner maintains that he has no knowledge of life in Jamaica and refuses to cooperate with the Jamaican Consulate Officer conducting interviews. *Id.* Accordingly, there has been no issuance of a travel document for Petitioner as of this date by the Jamaican government. Because Petitioner refuses to give any basic information, even to the Jamaican Consulate, there is little that ICE can do to assist in obtaining a travel document.

Petitioner has been served with numerous letters concerning his failure to comply with removal efforts. Doc. 13, p. 5. Due to Petitioner's continued failure to cooperate, Petitioner's case was referred to the United States Attorney's Office for the Northern District of Florida for criminal prosecution in October of 2010, but the office declined to prosecute the case on November 21, 2010. Doc. 13, p. 5. The ability to remove Petitioner to his true country of citizenship, Jamaica, has been hampered solely by Petitioner's refusal to cooperate with ICE officials or the Jamaican Consulate. *Id.*

**Petitioner's Replies**

Petitioner's first reply was submitted on April 6, 2011, doc. 14, and erroneously claimed Respondents had failed to respond to the petition. Petitioner was advised that was incorrect and given another opportunity to reply, specifically advising him to address Respondents' argument that Petitioner was a Jamaican citizen. Doc. 15.

Petitioner's second reply, submitted on May 3, 2011, was a letter indicating he was trying to find out about his case and asserting that he did not want to sign any

forms stating he was from Jamaica because he is not from that country. Doc. 16. Petitioner's letter was not in the proper format, was not signed under penalty of perjury, and no certificate of service was attached. In May, another order was entered advising Petitioner that his two responses were insufficient and directing him to provide an appropriate response which contained a certificate of service. Doc. 17.

Petitioner's third reply, doc. 18, was inappropriately styled as another letter. Petitioner asserted he had not received the answer from Respondents, and indicating he did not understand about the need for a certificate of service. He again claimed that ICE was "trying to force [him] to sign for a country where" he was not from. *Id.* Another order was entered providing additional explanation to Petitioner. Noting that Petitioner had made statements in his response, doc. 18, suggestion he was aware of Respondents' arguments, Petitioner was provided yet another opportunity to file a response. In particular, Petitioner was ordered to "address the merits" of the answer, doc. 13, and he was directed to "demonstrate that he has cooperated with removal efforts and demonstrate that he is a native of St. Thomas in the U.S. Virgin Islands as he claimed in the petition, doc. 1. Doc. 19.

Petitioner has not filed a response to that order. However, Petitioner filed a notice of change of address, doc. 20, and then a second notice of change of address, doc. 22, in which he said he had "been working on" the "native situation" and attached a birth certificate application form to that notice, indicating he was requesting a birth certificate from the Virgin Islands, Island of St. Thomas. Doc. 22, p. 3.

**Analysis**

Petitioner's latest response, doc. 22, indicates he was aware of the order requiring him to come forward with some evidence to support his claim that he is a native of St. Thomas. Yet, filing a notice showing Petitioner made an "application for birth record" from the Virgin Islands falls woefully short of the required demonstration that he *is* a native of St. Thomas. Furthermore, Petitioner has failed to respond in any meaningful way to the arguments raised in the answer, and Petitioner has failed to reply under penalty of perjury. Sufficient opportunities have been provided to Petitioner to support his habeas petition, and there is no need to delay further ruling on this petition.

This Court has jurisdiction over this § 2241 habeas petition as Petitioner is not challenging a final order of removal, but only seeking release from what he asserts is an unlawful and indefinite period of detention pursuant to Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). In Zadvydas, the Supreme Court held that the continued detention of legal permanent aliens beyond the mandated 90-day[2] removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States." *Id.*, at 689, 121 S. Ct. at 2498. For the sake of uniform administration by the federal courts, the Zadvydas Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' " Clark v. Martinez, 543 U.S.

---

[2] Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. 8 U.S.C. § 1231(a)(1)(A).

371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005), *quoting* Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505. The Court also concluded that if "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699, 121 S.Ct. at 2503.

In Clark v. Martinez, *supra*, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[3] The Court concluded that there was no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for an admissible alien. Clark, 543 U.S. at 386, 125 S.Ct. at 727. Thus, it held that the 6-month presumptive detention period prescribed in Zadvydas should be applicable. *Id.* Accordingly, under Clark and Zadvydas, when an alien shows that he has been held more than six months beyond the removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted. Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005) (relying on Clark to hold that "an inadmissible alien can no longer be detained beyond the statutory 90-day removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future.").

Under 8 U.S.C. § 1231(a)(1)(A), the government has a 90-day period of time to remove an alien. However, the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien

---

[3] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6), *quoted in* Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005).

fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).[4] Thus, the statute expressly permits an alien to be detained longer than the presumptive removal period where the alien acts or conspires to prevent his removal.

In Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d 213 (D. Mass. 2000), a case decided before Zadvydas, the court denied habeas relief where the Petitioner was found to be "the cause for the long delay." The court concluded that "an alien cannot trigger [a constitutional right to be free from indefinite detention by the INS] with his outright refusal to cooperate with INS officials." Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d at 221.

In Powell v. Ashcroft, 194 F.Supp.2d 209 (E.D. N.Y. 2002), a case decided in the wake of Zadvydas v. Davis, the court noted that Zadvydas was concerned with the constitutionality of § 1231(a)(6) where aliens were in " ''deportation limbo because their countries of origin had refused to allow [them] entrance.' " Powell, 194 F.Supp.2d at 211, *citing* Sango-Dema, 122 F.Supp.2d at 221 (explaining Zadvydas). The court held that Zadvydas was inapplicable because it "did not discuss the constitutionality of Section 1231(a)(1)(C) and the tolling of the removal period during the time of an alien's non-cooperation." Powell, 194 F.Supp.2d at 212, *citing* Guner v. Reno, 2001 WL 940576 (S.D. N.Y. Aug. 20, 2001). The court held that petitioner's continued detention was appropriate because he had not "provide[d] accurate and complete information to the INS," and that after he did so, it was likely that he would be removed. Powell, 194

---

[4] An alien must be detained during the "removal period." 8 U.S.C. § 1231(a)(2).

F.Supp.2d at 212.  See also Archibald v. I.N.S., 2002 WL 1434391, *8 (E.D. Pa. July 1, 2002) (finding the case factually distinguishable from *Zadvydas* where "Archibald's detention [was] a direct result of his seeking relief from deportation" and holding that because his indefinite detention was a result of his requesting a stay, he could not "be heard to complain[] that the time period during which he has been detained constitute[d] a denial of due process."); Thevarajah v. McElroy, 2002 WL 923914 (E.D.N.Y. Apr. 30, 2002)(holding that petitioner's nearly five years in the custody of INS was constitutional following *Zadvydas* because the continued detention was lengthened largely because of petitioner's own actions); *cf.* Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37 (D.D.C. July 22, 2002) (rejecting respondent's argument that petitioner "has not cooperated in obtaining travel documents because he told Liberian officials that he did not want to return to Liberia" and noting that INS had not argued that "petitioner refused to request travel documents or refused to be interviewed by Liberian officials" and did not deny "his Liberian citizenship, or gave false or misleading information that impeded the issuance of travel documents.").

In this case, Petitioner's six-month period of removal pursuant to Zadvydas has been tolled as permitted by 8 U.S.C. § 1231(a)(1)(C).  Petitioner has not come forward with any documentary proof at all to support his assertion that he is a citizen of the United States by virtue of having been born in the Virgin Islands.  Moreover, Respondents have demonstrated on this record that such an assertion is not true. Respondents have shown that Petitioner's social security number was invalid and that his birth certificate (presented during his July 30, 2002, interview) was fraudulent. There is no basis to believe Petitioner is from the Virgin Islands.

Case No. 4:10cv445-SPM/WCS

Moreover, Respondents have shown that Petitioner was previously removed to Jamaica.  Thus, if Petitioner were cooperating with removal efforts as required, Petitioner could already have been removed from the United States and living freely in Jamaica.  Petitioner has not made the required showing that it is not significantly likely that his removal could be carried out in the reasonably foreseeable future.  Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.  Based on that ground alone, the petition should be denied.

However, it may also be denied because Petitioner has failed to make any showing that he has cooperated with removal efforts.  Petitioner has thwarted the removal process by asserting a citizenship that has already been proven untrue.  Petitioner is the cause of his extended period of detention and may not be heard to complain of delay in effecting his removal.  Because Petitioner has acted to toll the removal period, his continued detention is lawful pursuant to 8 U.S.C. § 1231(a)(1).  Should Petitioner cooperate with Jamaican officials and ICE officials, it is reasonable to believe documents can again be provided to effect his removal.   This § 2241 petition should be denied.

Accordingly, it is **RECOMMENDED** that the petition for a writ of habeas corpus filed by DWIGHT DENNIS pursuant to 28 U.S.C. § 2241, doc. 1, be **DENIED.**

**IN CHAMBERS** at Tallahassee, Florida, on September 14, 2011.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**